TEXAS MIDLAND R. CO. v. SIKES.*
(No. 1603.)

(Court of Civil Appeals of Texas. Texarkana. April 6, 1916. Rehearing Denied April 13, 1916.)

1. CARRIERS ⬤⟝318(3) — INJURY TO PASSENGER—EVIDENCE.
    The implied finding in a verdict in a passenger's action, that it rained on plaintiff

through a broken or open window in defendant's car, *held* not against the great weight and preponderance of the evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307, 1308; Dec. Dig. &#9901;318(3).]

2. CARRIERS &#9901;320(30)—INJURY TO PASSENGER—QUESTION FOR JURY—CAUSE.

Evidence, in a passenger's action, *held* sufficient to go to the jury on the question of her ailment being caused by being rained on in defendant's car, and not being a mere continuation of a prior condition, or caused by being rained on elsewhere.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1248; Dec. Dig. &#9901;320(30).]

3. DAMAGES &#9901;132(5) — PERSONAL INJURY—EXCESSIVE VERDICT.

Under the evidence in a passenger's action for derangement of her menstruation from being rained on in defendant's car, *held*, that a verdict of $8,000 could not be said to be excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 376; Dec. Dig. &#9901;132(5).]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Maggie Belle Sikes, by next friend, against the Texas Midland Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Dashiell & Coon, of Terrell, and S. W. Marshall, and Coke & Coke, all of Dallas, for appellant. Evans & Shields, of Greenville, for appellee.

WILLSON, C. J. Appellee, plaintiff in the court below, claimed that on September 10, 1913, while a passenger from Greenville to Paris on one of appellant's trains, she was made wet by rain entering the coach she was in, through an opening appellant negligently permitted to exist in or above a window by which she sat. She claimed that the wetting caused her menstrual flow to stop and to be thereafterwards so deranged as to seriously and permanently injure her. The appeal is from a judgment in her favor for $8,000.

[1] The contention first made in appellant's brief is that the verdict and judgment are "against the great weight and preponderance of the evidence, in this, that it did not rain on the plaintiff through a broken or open window in the coach and wet her clothing." Appellee as a witness testified that it began to rain after the train left Greenville, and that she "noticed a mist coming in at the upper part of the train," and that "somewhere in the neighborhood of Commerce" a gust of rain came in from an opening two or three inches wide, which she afterwards discovered to be at the top of the window by which she sat. This gust of rain, she said, "made her wringing wet." The testimony of Mrs. Bourland, appellee's sister, was to the same effect, except that she said that as she remembered it the gust of rain came into the coach "just the other side of Commerce from Greenville." The testimony to the contrary was (1) that of the witness Mrs. Hunt, that she traveled on the train from Greenville to Commerce, sat fac-

ing appellee in the seat fronting her, and that she (witness) "did not notice any big gust of rain coming in at the window and wetting Miss Maggie" (appellee), between Greenville and Commerce, and "did not notice any rain coming in" while she was on the train; (2) that of employés of appellant in charge of the train, to the effect that appellee did not during the trip complain to any of them of the defect in the car; (3) that of the foreman of appellant's car department, to the effect that six or seven days before the time appellee claimed to have been made wet the coach she was then riding in had been repaired and sent out in good condition; and (4) the testimony of relatives of appellee whom she visited in Paris, to the effect that she said nothing to them about getting wet while on the train. None of the controverting testimony referred to, except that of Mrs. Hunt, is inconsistent with that given by appellee and her sister. The assignment presenting the contention stated is overruled.

[2] The second of the several contentions made by appellant is that appellee "failed to show by credible evidence that the injury she complained of was caused by exposure to the rain while in the car of defendant, but her injuries, if any, were a continuation of the ailment and sickness which she had for a long time prior to the date of the alleged injury suffered from." The only testimony we have found in the record which can be said to have tended in the least to show that before the time she made the trip to Paris appellee suffered from a derangement, and its consequences, of her menstrual flow, was (1) her own testimony and that of her mother and sister to the effect that in January before September, 1913, when she made the trip to Paris, she was vaccinated, and as a result had fever and suffered such a derangement of her menses as to cause her to take medicine; and (2) testimony that a drug concern in Greenville filled prescriptions of a physician, who died before the trial, for medicines proper to give to control the menstrual flow, as follows: June 20, 1912, one for Miss Sikes; October 23, 1912, one for Maggie Sikes; and January 1, 1913, another for Maggie Sikes. Appellee's sister, Mrs. Bourland, testified that the prescription filled June 20, 1912, was for her, and not for appellee; and appellee, her mother, and her sister all testified that before appellee took the trip to Paris she had never, except when she was vaccinated as stated, suffered from any disorder of her menstrual flow, and had never, except on that occasion, taken medicine of any kind to control menstruation. Certainly in this attitude of the testimony we cannot assume, as appellant does, that the injury appellee was caused by her being made wet on the train was a continuation merely of an ailment she suffered from before she made the trip. If her own,

her mother's and sister's testimony was entitled to credit, she promptly and fully recovered from the derangement caused by the vaccination, and never afterwards until she made the trip to Paris suffered from any other or further derangement of her menses. We have found nothing in the record which would justify us in saying that the jury did not have a right to believe that testimony. The testimony was conflicting as to whether appellee was exposed to rain and made wet while in Paris, and while in Cooper, on her way back to her home in Greenville. The jury evidently found she was not; or, if she was, that the wetting she sustained on appellant's train was the proximate cause of the injury complained of. The testimony was sufficient to show that, if appellee was made wet while on the train as she and her sister testified she was, the wetting might have caused the injury the jury found she suffered. Whether it did in fact cause it, or not, was for the jury to say. The second assignment is overruled.

[3] The third of the contentions made is that the "amount of damages awarded the plaintiff is excessive." The testimony on behalf of appellee indicated that, as a result of the derangement of her menstrual flow, appellee, a young girl 16 or 17 years of age at the time of the trial, who before she took the trip to Paris weighed 125 pounds and enjoyed good health, had become a chronic invalid, weighed 102 pounds, and suffered a great part of the time. With reference to her condition, Dr. Smith testified:

"I made an examination of her recently, and she is suffering from chronic inflammation of the womb, endometritis, and also a forward displacement of the womb, and she has an adhesion of the womb. She also has an inflamed condition of both of the ovaries, and also her menstrual period is irregular, staying from two to three weeks at a time. I know that she has had her menstrual flow on her at this time for something about a month, I don't know the exact time, but it is in the neighborhood of a month now. A girl of her age, in the condition she is in now, is in a serious condition. It is not serious as far as life and death is concerned, but it is serious as far as her health is concerned. As to what her condition in the future will be, judging from the past and the condition she is in at the present time, there are several things that might happen. She will always have more or less womb trouble; she has a fixed uterus; it is bound down by adhesions, and nothing outside of an operation will loosen that up. Her ovaries are also diseased, and it is a question whether they will ever get better. I can't tell. They might get considerably worse, but I don't think they will get very much better. As for the flow, we may be able to regulate that later on. If her ovaries get diseased to such an extent that they have to be removed, that will prevent her from ever bearing a child. That is the functions of the ovaries. They make childbearing possible, and, if they are removed, it is impossible for a woman to bear children; she will be childless the balance of her life. I could not tell you how badly her ovaries are diseased, not without seeing them, and there is no way of seeing the ovaries without performing an operation."

If the injury to appellee is as serious as the testimony quoted indicates it is—and that it is, is not disputed by any other testimony in the record—the verdict and judgment are not excessive. The third assignment is overruled.

In the assignments remaining undisposed of, appellant complains of the refusal of the trial court to grant it a new trial, because of testimony it claims it discovered after the trial of the cause was concluded, and which, it further claims, probably would affect the result if the cause should be tried again. After considering these assignments, we are of opinion they should be overruled.

As we view it, the testimony authorized findings involved in the verdict: (1) That because of negligence on the part of appellant the coach in which appellee traveled from Greenville to Paris was so out of repair as to permit rain to blow into it; (2) that appellee was made wet by rain which blew into the coach because of the defect therein; (3) that as a direct result of being so made wet appellee suffered the injury she complained of; and (4) that she was thereby damaged in the sum of $8,000.

The judgment is affirmed.